STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LAUREN M. HARDING (CABN 308029)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6938
      FAX: (415) 436-7234
      Lauren.Harding@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 22-0331 WHO |
| Plaintiff, | UNITED STATES MEMORANDUM IN SUPPORT OF THE DEFENDANT'S PRETRIAL DETENTION |
| v. | |
| JOHNNATAN ZELAYA IZAGUIRRE, | |
| Defendant. | |

## I.      INTRODUCTION

Since late 2013 until his arrest in January 2022, the defendant Johnnatan Zelaya Izaguirre—a driving instructor and Police Academy graduate—used his position of authority and the powers of social media to prey on teenage girls.  He used social media to identify teenage girls, including those named in the indictment and others ranging from ages 14 to 17, and entice and coerce them to produce child pornography.  He enticed them by, among other things, complimenting their appearances, developing sexualized "friendships" with them, and offering financial rewards for creating the explicit content.  He coerced them by flaunting his position of power as a so-called "manager" or, in one instance, threatening to leak the explicit content to everyone she knew if the victim stopped creating content.  All the while, the defendant knew the girls were minors.

The defendant also leveraged his position as a driving instructor to identify and coerce teenagers to create pornography for his personal use and for sale.  Most recently, the defendant met a girl, whom he thought was 17 but was actually an adult undercover agent, through his job as a driving instructor. During their driving lessons, the defendant discussed his side job as a manager of explicit online content and later developed a sexual relationship with her (including by having phone sex with her in a public place during the work day), and asked her to create explicit content for him.  Several other former driving students of the defendant have come forward alleging abuse or harassment.

The pending indictment brings two counts of Coercion and Enticement to Produce Child Pornography, in violation of 18 U.S.C. § 2422(b), one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Because these counts involve minor victims brought under Sections 2422 and 2252(a)(2), there is a presumption in favor of detention.  18 U.S.C. § 3142(e)(3)(E).  That presumption aligns with both pretrial services' recommendation of detention and a sad reality:  The defendant's victimization of multiple minor girls over 8-plus years proves he is a danger to the community and should be detained pretrial.  Should the Court disagree, the Court should impose strict conditions of confinement that, among other things, limit the defendant's access to minors and the victims.

## II.    FACTUAL BACKGROUND

Johnnatan Zelaya Izaguirre is a 39-year-old resident of Redwood City who, until his arrest in January 2022 on related state court charges, was the owner and operator of a driving school in San Mateo County.  Alongside his role as a driving instructor, the defendant "managed" younger women creating and selling sexually explicit content online.  He found his female clients through his driving school and over social media.  Several of his "clients" were minors.

### A.  The Defendant Harassed Minor Driving Students

During driving lessons, the defendant groomed young female students and tried (sometimes successfully) to persuade them to create pornographic content.  According to Redwood City's report, at least four female students, two or three of whom were minors at the time, reported that the defendant made sexual remarks to them during their driving lessons.  The defendant falsely told two of those

student victims that he was in law enforcement.  (The defendant graduated from the Police Academy but never joined a police department.)

In an August 30, 2021 email, two former students write to the defendant:

"Jonathan, we are writing to you as former students of the California Driving Academy where you instructed us in 2017 and 2018.  As two separate clients, we have found many disturbing similarities when comparing our individual experiences.  We have come to the conclusion that there were several, consistent instances of inappropriate sexual misconduct on your end that require addressing.

These instances include, but are not limited to:

Initiating conversations inquiring about the intimate details of our sexual experiences.

Offering to purchase sex toys and explicitly saying that this would be under the condition that parents would not be made aware.

in no circumstance is it appropriate for you, an adult man in a position of disproportionate power and authority, to engage in conversations about sex with underage girls."

After receiving this email, in late 2021, an undercover Redwood City police officer ("UC") posed as a 17-year-old driving student taking lessons from the defendant.  During her first lesson with the defendant, the UC stated her fictitious age (17) and showed him a driving permit displaying her age.  The defendant proceeded to explain that he managed boudoir-style photos as a side job.  During a different driving lesson, the defendant showed the UC nude and sexually suggestive photos of females on his phone.  The defendant explained how the UC could create a social media account that she could conceal from her parents using "incognito" mode.  He also gave her marijuana gummies during the lesson.

The defendant and the UC continued to communicate over the phone and social media.   The defendant sent her screenshots of messages from women claiming the defendant provided the best oral copulation that they had ever had.  He sent her videos of girls masturbating.  The defendant admitted to the UC that he was a sex addict and porn addict.  The UC and the defendant had a phone sex in which he explained to the UC how to masturbate and described how he would orally copulate and have sexual intercourse with her.  He admitted to ejaculating as a result of the conversation.  He stated that, during this conversation, he was seated in his car in a public parking lot near a Starbucks and he needed to

1   return back to work (as a driving instructor).  Redwood City's police report documents several other

2   highly sexual conversations between the UC and the defendant.

3          He also explained that he worked with other girls creating sexually explicit content.  He said he

4   made an average of $1000 to $6000 a month managing content.  After describing his business of

5   managing explicit content—including by showing her several examples of explicit videos and photos—

6   he eventually asked the UC to do a "photo shoot" with him.

7          Throughout his conversations with the UC, the defendant displayed an acute awareness that what

8   he was doing with her was wrong.  He told her to speak quietly on the phone so her parents wouldn't

9   hear.  He told her to tell him anything "inappropriate" over a phone call because he didn't want anyone

10  else reading or seeing it in a message.  He asked the UC to delete messages sent over Instagram by

11  "unsending" them and to use the "vanish" mode on Instagram to conceal the messages.  The UC offered

12  to stop talking to him and contact him after she turned 18, to which the defendant replied no, he couldn't

13  let her go.

14         The defendant was arrested on January 4, 2022 during a planned meet-up with the UC.

15      **B.  The Defendant Identified Victims Over Social Media**

16         The defendant also used social media to find, entice, and coerce girls to create sexually explicit

17  content.  The Redwood City police report notes that the defendant's Instagram account shows that he

18  contacted "upward of 100 plus young girls via Instagram . . . The age range of the females is 15 years

19  old and above."  The report documents that the defendant proceeded to coerce and entice girls in similar

20  ways.  He engaged in casual conversation and eventually asked if the female would be interested in

21  selling their sexual content to customers.  He told the females that he would be the "manager" of their

22  content and explained they could earn money by selling their explicit content to others.  He asked the

23  girls similar questions—ranging from whether she was comfortable with nudity to whether she had

24  lingerie, toys, or a tripod.

25         To give just one example the types of conversations found on the defendant's devices, in

26  conversations with the victim named in the Indictment as L.H., the defendant directed L.H. to make

27  "promo videos" where she was in "lingerie or something really skimpy," along with more explicit

28  videos of her masturbating.  He forwarded to her customer requests for specific videos that satisfied the

customers' sexual fetishes.  He sent a list of the money she could earn for "non nude" videos and "nude" videos, which could include masturbation and "toy play."   The prices ranged from $8 to $20.  The defendant explained that he would get a gift card code from a sale he would "split" with her.

As with the UC, the defendant knew that L.H. was a minor, even as he directed her to create pornography.  He told her: "If anything happens.  You told me you were 18," "Make sure to delete our Kik messages daily," and "I am being extra careful with you because of your age."

When the victim informed the defendant she was not going to make the photos/videos anymore, the defendant threatened to leak her pictures to everyone she knew.

### C.  The Defendant Had Hands-On Contact With Victims

Along with documenting the defendant's numerous sexually explicit The Redwood City police report describes several instances of hands-on contact with victims.  For instance, a video found on the defendant's devices shows him having sexual intercourse with a girl; the date of the video, along with text messages between the defendant and the girl, shows she had just turned 17 years old.

As another example, the defendant met one girl over Instagram when she was 16 and proceeded to have sexually explicit conversations with each other before she turned 18.  Shortly after she turned 18, they went to a group "sex party" during which the defendant and the victim had sexual intercourse.

The indictment also brings charges relating to K.B., a minor victim whom the defendant met in late 2013 over social media when she was around 16 years old.  K.B. and the defendant had a long-distance relationship with one another before she turned 18.  K.B. reports the defendant flew to meet her out-of-state and that they had sexual intercourse before she turned 18.

In an email from a family member to the defendant from March 2015, the family member states that it is a problem that the defendant is a "borderline pedophile."  The family member goes on to say (referring to K.B.), "She added me on Facebook and I saw that she posted 'Turned 18 today!' 2 weeks ago, meaning that you were going out with a 17 year old this whole time and that you probably first met her when she was 16. Imagine what our clients will think when they find out our 31 year old primary instructor and manager is dating a teenager."

**D. Additional Knowledge of the Girls' Ages**

As noted, there is overwhelming evidence showing the defendant knew he was interacting with minors. In addition, there are photos found on the defendant's devices showing that he knew E.S. and K.B. (named in the indictment in Counts Two and Three) were under 18. In a video found on the defendant's devices, a female is seen masturbating and a man (off screen) directs her to say his name and what she is doing. She states that she is "[expletive for masturbating] my . . . sixteen year old [expletive for vagina] for you, Johnny." Johnny is the defendant's nickname.

## III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is *either* a danger to the community *or* a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

There is a rebuttable presumption that no conditions will reasonably assure the appearance of the person and the safety of the community if the Court finds that there is probable cause that the person committed "an offense involving a minor victim under section . . . 2242 [Enticement and Coercion] [and] 2252(a)(4) [Possession of Child Pornography]." 18 U.S.C. § 3142(e)(3)(E).

## IV.    ARGUMENT

### A. The Defendant—Who Has an 8-Plus Year History of Online and Hands-On Abuse of Teenage Girls—Poses a Danger to the Community That Cannot Be Mitigated by Conditions of Confinement.

The government and Pretrial Services agree that the defendant poses a danger to the community warranting detention pretrial.  Because the Indictment charges the defendant with violations under Sections 2242 and 2252(a)(4), and those violations involve minor victims, there is a rebuttable presumption in favor of detention.  That presumption makes good sense here, where the Grand Jury found probable cause supported that the defendant victimized at least three identifiable victims (L.H., E.S., and K.B.).  The government's investigation remains ongoing for charges relating to other victims.

The defendant's actions go beyond mere possession of child pornography, which, under some circumstances, may justify pretrial release.  Instead, the government is aware of three victims with whom the defendant had sexual intercourse.  K.B., named in the Indictment in Count Three and who was in a long-distance relationship with the defendant, reports having sex with him before she turned 18. The defendant also recorded a video of him having sex with a second victim who had just turned 17. And the defendant had sex with a third victim shortly after she turned 18.  The defendant knows, or will know, who these victims are and likely still has their contact information.

The evidence also supports that the defendant abused his position of power as a driving instructor and owner of a driving school to identify and victimize minor girls.  The highly sexualized interactions with the UC show the defendant was not deterred by her status as his student or her age. Nor was he deterred by the email from two former students that he had received just months before that described his actions "disturbing" and "inappropriate."  He instead used the opportunity afforded by a close-contact and private driving instruction to groom the UC, introduce her to his work managing explicit content, and later develop a sexualized relationship with her (including by having "phone sex" and describing his fantasized sexual encounters with her).  As documented above, the UC is not the only victim who was a student of the defendant.

To be sure, the United States understands that the defendant is no longer giving driving instruction and has turned over the ownership of his business to his mother.  But that legal arrangement

is not sufficient to protect the community from the defendant's access to victims and minor girls.

First, the defendant lives with his mother; a car with the driving school logo is even parked in his front driveway. So the legal setup whereby his mother "owns" the business does little to prevent the defendant from influencing the school's business decisions, or accessing its student rosters (where hundreds of minor students' and potential witnesses' contact information is listed).

Second, the defendant's abuse extends beyond in-person contact. Counts One and Two allege enticement and coercion of minors whom the defendant identified over social media. Even with strict limitations on the defendant's social media use, the defendant may seek to evade those limitations by using the very tools he taught his victims to employ: using "vanish" or "incognito" mode or deleting messages by "unsending them." In the modern era where even a television is connected to the internet, there can be little doubt that access to electronic devices and social media is possible even with the strictest of conditions.

Third, the defendant's longstanding history of abuse—beginning no later than November 2013 and continuing until his arrest in January 2022—coupled with the numerous teenagers victimized by the defendant's behavior—three of whom are identified in the Indictment, but several others of whom are not—suggests the defendant's propensity to reoffend is not easily fixed. As he admitted to the UC, he is a "sex addict" and "porn addict." His behavior proves those addictions are for minor girls, in particular.

Finally, even while he was victimizing girls, he seemed to know his actions were wrong, yet he remained undeterred. For instance, in a March 2015 email from a family member, the defendant was called out for his inappropriate relationship a minor and what impact that could have on clients of the driving school. In discussions with K.B., the defendant told her he loved her and that K.B.'s mom would "kill us if she finds out" and would try to put him "in jail." And in conversations with the UC, he asked whether she was "a secret agent" who was "trying to get me to do things so I get in trouble." Yet, despite those trepidations, he persisted in his sexual discussions with her. Given that the defendant already knew his actions were wrong—yet he committed to offend anyways—conditions of release will likely do little to deter the defendant's further offenses pretrial.

**B.  In the Alternative, the Court Should Impose Strict Conditions of Confinement.**

The defendant will be unable to rebut the presumption in favor of detention. Should the Court

disagree and seek to release the defendant, however, the government respectfully requests strict

conditions of confinement to safeguard the community and the victims, some of whom are named in the

Indictment and others of whom related charges are under investigation.  The government requests

various standard conditions (e.g., not committing any further crimes), along with the following:  (a)

surrendering all passports; (b) not possessing any firearm (including the two presenting in his home); (c)

participating in mental health services; (d) remaining in a custodian's care; (e) not travelling outside of

the Northern District of California; (f) remaining at his residence other than for specified purposes or

with Pretrial Services' approval; (g) location monitoring; (h) abiding by all conditions of his release in

state court; (i) a bond; (j) not contacting any victim directly or indirectly; (k) having no unsurprised

contact with minors; (l) not seeking employment that would put him in contact with minors; (m) not

using social media of any kind; and (n) access to only one pre-approved electronic device monitored by

Pretrial Services.  The limitations on the defendant's social media use and work with minors are

particularly essential to mitigate the risk that the defendant will repeat his abusive behavior in those

settings.

DATED:       9/13/2022                            Respectfully submitted,

                                                 STEPHANIE M. HINDS
                                                 United States Attorney


                                                 ____/s/_____
                                                 LAUREN M. HARDING
                                                 Assistant United States Attorney